IN THE MATTER OF THE PETITION OF THE BANK OF NOVA SCOTIA *v.* THE PROCEEDS OF THE BRIG LILLIAN.

(*District Court, E. D. New York.* July 28, 1880.)

1. SEAMEN—WAGES—RIGHT IN FREIGHT—LIEN ON SHIP—MORTGAGEE—PRIORITY.—The rights of a lender upon the security of freight, made payable to the lender by a bill of lading, are subject to the seaman's right in the freight to the extent of his wages. Seamen may proceed for their wages against both ship and freight. When they do so proceed, and either fund is sufficient to pay them in full, the court can direct as to the mode of satisfying their decrees. The equity in the freight, created by an advance upon the credit of the freight, is no greater than the equity in the ship created by a mortgage of the ship. As between two such creditors, the equitable method is to charge the wages upon both funds, *pro rata.*

*McDaniel & Souther,* for the bank of Nova Scotia.
*Owen & Gray,* for Moran.

BENEDICT, D. J. The question presented by this petition arises as follows: The master and crew of the brig Lillian libelled that vessel, and also the freight earned upon her last voyage, to recover their wages. The vessel has been seized and sold, the proceeds amounting to $4,000. The freight proceeded against, amounting to $1,095.96, has also been attached. The master has obtained a decree by default for his wages, amounting to $270.41, against both the vessel and the freight. The seamen have obtained a decree for their wages, amounting to the sum of $264.30; also against both vessel and freight. Several other claims were presented which are not in dispute; but, after paying all liens but those of the master and seamen, there remain of the proceeds of the vessel in court more than sufficient to pay their wages without resort to the freight, and of the freight more than sufficient to pay the wages without resort to the vessel. The Bank of Nova Scotia now makes it appear that they have a mortgage upon the vessel exceeding in amount the whole of the proceeds now remaining in the registry, and having made due proof of their mortgage, and the

amount due thereon, they apply to the court, by petition, for an order directing that the wages of the master and crew may be paid out of the freight, and that the whole of the proceeds of the vessel remaining in the registry may be paid to them in satisfaction *pro tanto* of their mortgage.

James A. Moran also makes it appear that the freight in question was made payable to him, by the bill of lading, as security for certain advances made by him to pay expenses of the vessel incurred in fitting out and performing the voyage in which the freight now in the registry was earned, which advances he has shown amount to more than the amount of the freight in the registry, whereupon he asks to have the wages of the master and crew paid out of the proceeds of the vessel, and the amount of the freight in the registry paid over to him.

In this controversy the owners of the vessel have not appeared, and no claim has been made, on their behalf, to any part, either of the proceeds of the vessel or the freight. No defence was made to the demand of the master and crew, either by the owners or by the Bank of Nova Scotia, or any other person, and accordingly the master as well as the seamen have obtained decrees for their wages against both the ship and the freight. As the demands of the master and crew can be paid in full, either out of the freight or out of the proceeds of the vessel, they care not to which fund they resort for the satisfaction of their decrees, and make no opposition to any order that may be made respecting the payments of their demands. It is thus seen that this is a controversy between two creditors, one of whom has made advances on the security of the ship, the other on the security of the freight.

It has been contended, in behalf of the holders of the mortgage upon the ship, that Moran acquired no lien upon the freight by reason of his advances, and, therefore, inasmuch as his right is simply that of an assignee of the ship-owner, that the question at issue is the same as if the controversy were between the ship-owner and the mortgagee, in which case,

as the master and crew can resort to either the ship or the freight for the satisfaction of their demand, while the mortgagee can resort to the ship alone, the wages should be satisfied out of the freight, in accordance with a familiar rule in equity. This contention is partly right and partly wrong. It is undoubtedly true that Moran acquired no lien upon the freight for his advances. His right depends upon the contract made with him by the ship-owner, that the freight should be collected by him and applied to him to repay whatever might be due him for the moneys he had advanced. His interest in the freight must, therefore, be subject to that of the seamen. But it does not follow that he is thereby eliminated from this controversy, as the mortgagee contends. If he were, the same reasoning would eliminate the mortgagee. The ship-owner is the one that has been eliminated, leaving the mortgagee of the ship and the assignee of the freight the only parties to the controversy, and their right and their equities alone to be considered.

It has been urged in behalf of the assignee of the freight that his advances were made for the purpose of enabling the ship to earn the very freight which he now claims, and a superior equity arises in his favor out of that fact. But, as before stated, the law gave him no lien upon the freight for his advances, and I am unable to see that the fact that the money was applied to payments for the outfits of the vessel for this voyage gives him any greater equity in the freight than that acquired in the ship by the mortgagee of the ship, through his advances. As between these two parties the equities are equal.

If the holder of the mortgage upon the ship has no equity superior to that of the assignee of the freight, his application to have the wages paid out of the freight cannot be granted, unless it can be held, as matter of law, that the lien of the seamen does not attach to the ship when there is freight sufficient to pay the wages, and available to the seamen for that purpose. Manifestly, no such proposition can be sustained. The seamen have a right in the freight, and at

the same time a lien upon the ship. The ship is as much bound for the payment of the wages as is the freight. The seamen may resort to either fund in the first instance, and, that proving insufficient, they may resort to the other; or, as here, they may proceed against both at the same time. When, however, they do proceed against both, and, as here, either proves sufficient, the court has the undoubted right to control the method of satisfying their decrees. And when there are two creditors whose equities are equal, one of whom is entitled to the surplus of the freight and the other to the surplus proceeds of the ship, the only equitable method is to direct that the wages be charged against both funds *pro rata*. That is to say, that out of the freight shall be paid the master and crews, upon their decrees, a sum bearing the same proportion to the whole amount of the wages as the amount of the freight bears to the balance of the proceeds of the ship in the registry, and that the remainder of the wages shall be paid out of the proceeds of the ship. The freight moneys in court after such deduction may then be paid to Moran, upon his filing his petition therefor, and the proceeds of the ship remaining after such deduction may then be paid to the Bank of Nova Scotia, upon the present petition.